# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 6361 | **DATE** | 2/6/2013 |
| **CASE TITLE** | *United States v. Sebolt* | | |

**DOCKET ENTRY TEXT**

For the reasons stated above, Sebolt's motion to vacate, set aside or correct his sentence [1-1] is denied as to the claims regarding ineffective assistance of counsel related to trial strategy and sentencing counsel. The claims of ineffective assistance of trial counsel with respect to the issues identified below will be addressed in an evidentiary hearing. Counsel will be appointed for Sebolt in an order to follow. After counsel is appointed, the Court will set a date for a status at which time a hearing date will be set.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

Philip Sebolt was charged with four counts of violating federal child pornography laws: Count I – possession of material that contained images of child pornography that had been shipped and transported in interstate commerce by a means including a computer; Counts 2 and 3 – knowingly transporting and shipping child pornography; and Count 4 – knowingly making and publishing a notice and advertisement which was offered to receive, exchange, produce, display and reproduce visual depictions involving the use of minors engaging in sexually explicit conduct.

A.   Background

After a four-day jury trial, Sebolt was found guilty of all counts and this Court sentenced him to 360 months imprisonment: 60 months on Count 1, 120 months each on Counts 2 and 3, and 240 months on Count 4, with the sentences on Counts 2 and 3 to run concurrently to each other but consecutively to Count 4. On appeal, the Seventh Circuit affirmed his conviction, *United States v. Sebolt*, 460 F.3d 910 (7th Cir. 2006), but ordered a limited remand pursuant to *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005). After this Court indicated that it would have imposed the same sentence had it known the Guidelines were advisory, the Seventh Circuit affirmed the sentence. *United States v. Sebolt*, 320 Fed. Appx. 468 (7th Cir. 2009). Currently pending before the Court is Sebolt's motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. He contends that he received ineffective assistance of trial and sentencing counsel. For the reasons stated below, the motion is denied in part and granted to the extent that the Court orders an evidentiary hearing with respect to certain issues as detailed below.

B.   Preliminary Issues

Prior to considering the merits of the ineffective assistance of counsel claims, the Court addresses two

preliminary arguments made by the government.

1. Timeliness

The government first contends that Sebolt's petition is time-barred. As is relevant here, motions under § 2255 are subject to a one-year statute of limitations, running from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f). For defendants who unsuccessfully try to take their cases to the Supreme Court, the statute of limitations for § 2255 begins to run on the date of denial of a petition for certiorari. *United States v. Marcello*, 212 F.3d 1005, 1008 (7th Cir. 2000). Sebolt's petition for certiorari was denied on October 5, 2009. Thus, the limitations period expired on October 5, 2010, the date on which Sebolt filed his § 2255 motion. Therefore, the motion is timely.

2. Procedural Default

The government also argues that Sebolt's ineffective assistance of trial counsel claim is barred by procedural default. "Where a defendant offers no extrinsic evidence to support his claim of ineffective assistance of counsel and he was represented by different counsel on appeal, that defendant must bring that claim on direct appeal or face procedural default for failing to do so." *McCleese v. United States*, 75 F.3d 1174, 1178 (7th Cir. 1996). Although Sebolt was represented by different counsel on appeal, he refers to evidence outside the record to support his ineffective assistance of trial counsel claim. Accordingly, the Court finds his ineffective assistance of trial counsel claim is not procedurally barred.

C. Ineffective Assistance of Counsel

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the court which imposed his sentence to vacate, set aside or correct the sentence on the ground that it was "imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." Sebolt asserts that he received ineffective assistance of counsel. A petitioner bears a "heavy burden in proving that [his] attorney rendered ineffective assistance of counsel." *United States v. Holland*, 992 F.2d 687, 691 (7th Cir. 1993). To prevail, the petitioner must establish that: (1) his attorney's representation "fell below an objective standard of reasonableness"; and (2) his defense was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner bears the burden of both proof and persuasion that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment . . . [and] that the deficient performance prejudiced the defense." *United States v. Davenport,* 986 F.2d 1047, 1049 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 687). Courts must presume that counsel is effective. *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1403 (2011).

1. Trial Counsel

   a. *Did Trial Counsel Render Ineffective Assistance by Failing to Advise Sebolt Regarding the Sentencing Guidelines*?

Sebolt, who was represented at trial by two attorneys, Elaine Odeh and Brian Scanlon, first contends that trial counsel rendered ineffective assistance when they failed to advise him of the Sentencing Guidelines range and the correct statutory maximum applicable to his offenses prior to trial. Sebolt contends that, as a result, he was not able to make an informed decision about whether to accept the government's plea offer or proceed to trial.

Sebolt's assertion that he was not aware of the statutory maximum is contradicted by a June 9, 2005 letter that he attaches to his motion (Def.'s Ex. 9) in which he states to his appellate counsel that "I was aware of the minimum and maximum of statutory sentencing for all of my charges prior to trial." (Def.'s Ex. 9 at 1.) Indeed, he goes on to state that "I became aware of my charges and the respective statutory sentencing at my arraignment at the end of Aug 2002" and that "I was . . . charged with possession (0-5), advertising (10-20), and Interstate travel for sex (0-15.)." (*Id*.) Because Sebolt's contention that he was not instructed as to the statutory maximums is belied by his own statements, this basis for relief is rejected.

Sebolt also argues that counsel's failure to instruct him on his Guidelines range constitutes ineffective assistance of counsel. According to Sebolt, in the only discussion he had with his counsel about the Guidelines prior to trial, Odeh stated that she was aware of the Guidelines, but did not know much about them while Scanlon said that the Guidelines "are very complex and confusing." (Def.'s Mem. Supp. § 2255 Mot. at 14.) Sebolt asserts that as a result of counsels' failure, he was unable to make an educated and reasoned choice about whether to go to trial or accept a plea deal. In the same letter to appellate counsel referenced above, Sebolt stated that after his motion to suppress was denied, Scanlon told him that the government was considering a 10-year plea deal on the advertising count while dropping the possession and interstate travel counts. (Def.'s Ex. 9 at 1-2.) Sebolt goes on on to state that:

> I felt 10 yrs. was too much and [Sacnlon] agreed. [Scanlon] also warned me that it's a [safe] choice to take a plea since I will run the risk [of] possibly getting more time in prison. I took this to mean that the [judge] could give me a higher sentence than 10 years because [I] pissed off the judge in going to trial. Also, in my [mind,] I figured the judge would give me the lowest [possible] sentence because I had zero previous run-ins with [the] law as an adult.

(*Id*. at 2.) Sebolt also notes that while his lawyer told him that the government was at one point contemplating a plea deal with a sentence of less than 10 years, it decided not to make the offer. (*Id*.) Sebolt states in his letter that:

> I had an upset reaction to the news [*i.e.*, that the government was not willing to go below 10 years] and I had a hard time accepting that I must do 10 [years][1] at best. A trial date was set on that day. [Scanlon] spoke with me after the hearing and I continued to reject the reality of the news. [Scanlon] took this to mean that [I would] want to take the case to trial. Once it was decided that that's what will happen, I felt relieved that the pressure [of] having to accept 10 yrs. was off my chest and that my [hope] of coming home sooner was not over.

(*Id*.)

The letter goes on to note that the indictment was superseded and that "[a]fter finding out of the superseded charges, [Odeh] had explained that Valarie (the prosecutor) told [Odeh] that I'm now looking at a sentence between 17 to 21 ½ years. [Odeh] said Valarie is wrong and that she doesn't know what she is talking about." (*Id*. at 3.) Sebolt, however, states that "[Odeh] further said that the max for distribution is 15 years and she said that if Valarie was correct; she would suggest I plead guilty to the offered 10 years." (*Id*.) When the plea offer from the government apparently changed from 10 years to 17 years based on superseding charges, "[I] figured that I might as well continue to [take] the case to trial because why would I take the [new] plea offer of 17 years?" (*Id*.)

The government contends that these statements by Sebolt in his letter to appellate counsel establish

that he was aware of his sentencing exposure and knowingly chose to proceed to trial. The government notes that Sebolt himself states that he was unwilling to accept a plea of even 10 years and, in any event, there is no proof that a plea bargain with the government would have resulted in 10 years.

In the context of advice concerning a plea agreement, the Seventh Circuit has noted that "[a] reasonably competent attorney will attempt to learn all of the facts of the case, make an estimate of the likely sentence, and communicate the result of that analysis before allowing the client to plead guilty." *Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006). The record as it stands indicates that Sebolt was informed in bits and pieces as to what his sentence might be, but it simply is not clear that his trial counsel collected the facts, made an estimate of the likely sentence he was to receive and communicated that result to Sebolt prior to his decision to either pursue a plea or go to trial. The government states in a footnote that it can procure affidavits from counsel should the Court need Odeh to address any of Sebolt's assertions. But, an affidavit cannot definitively decide the issue as it will likely come down to a credibility determination. Instead, the Court will schedule an evidentiary hearing to address what trial counsel knew and communicated to Sebolt prior to his decision to go to trial rather than accept a potential plea offer.

      b.     *Did Trial Counsel Render Ineffective Assistance By Advising Sebolt to Reject the Plea Offer and by Failing to Advise him of the Possibility of Additional Charges?*

Sebolt next contends that Odeh was ineffective because she advised him not to accept the government's plea and instead go to trial. The government relies on statements in a January 23, 2003 letter from Odeh to Sebolt's relatives (which Sebolt cites to in his motion) in asserting that counsel did not advise him to plead guilty. In the letter, Odeh begins by stating that "all of the decisions in this case that effect Phil [Sebolt] are ultimately his decisions to make. We can tell him the law and advise him as to our opinion of the best strategy to follow, but we do not make the final decisions on how to proceed." (Def.'s Ex. 2 at 1.) Odeh also responds to the relatives' question as to whether a possibility of a plea bargain existed. Odeh states that she and her co-counsel had spoken with the prosecution regarding a plea deal and that "the only terms that the government will agree to are as follows: they would dismiss all charges except advertising and would agree to a sentence of 10 years on that charge. We have conveyed this offer to Phil and to date he had indicated that it is not acceptable to him." (*Id*.) Later, the letter states that "[t]he decision to persist in that plea [of not guilty] is ultimately up to Phil, but we have advised him, according to the strategy we expect to use at trial, that it would be best to maintain his plea of not guilty . . . (assuming he does not want to take the offer of 10 years)." (*Id*.) Moreover, in response to the relatives' question asking "[i]s it so clear cut that this does not constitute advertising that the jury is sure to find him not guilty," Odeh stated that "It is not clear cut at all. As we have told you and Phil many times this charge is a difficult one to beat, but if Phil wants to proceed to trial this [i.e., holding the government to its burden to prove each element of the crime] is the strategy we propose." (*Id*.)

While counsel indicates in this letter that she told Sebolt that the final decision was his, she also acknowledges that she advised him to go to trial if he was unwilling to accept the ten-year plea deal. As noted above, the plea offer apparently changed from ten years to seventeen years based on the superseding indictment, and the record is unclear as to what counsel told Sebolt regarding the additional time and his chances at succeeding at trial. "When counsel advises the defendant to reject a plea offer, his performance is not objectively unreasonable unless such advice is made 'in the face of overwhelming evidence of guilt and an absence of viable defenses.'" *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citation omitted). On appeal, the Seventh Circuit noted that there was "overwhelming evidence of guilt." *Sebolt*, 460 F.3d at 918. Accordingly, an evidentiary hearing will be required not only as to what defense counsel told

Sebolt prior to his decision to proceed to trial regarding his sentencing exposure, but also with respect to the facts surrounding counsel's advice as to whether he should plead guilty or go to trial.

Sebolt also asserts that without his knowledge, Scanlon informed the Court that Sebolt would not be accepting the government's plea offer and would be proceeding to trial. He further contends that counsel was ineffective for failing to advise him of the possibility of additional charges, and asserts that had he known of the possibility, he would have accepted the 10-year plea deal. The government does not respond to these arguments. Accordingly, these will also be addressed at the evidentiary hearing.

    c. *Trial Strategy*

Sebolt next asserts that counsel rendered ineffective assistance based on flawed trial strategy, including: (1) advising Sebolt to wear an orange prison jumpsuit during trial; (2) eliciting testimony that Sebolt was facing state court charges; (3) conceding guilt to the possession charge during closing arguments; (4) relying on the government's computer expert witness; and (5) failing to object to certain evidence.

In considering a claim of ineffective assistance of counsel, counsel's performance is viewed deferentially, "with the understanding that there is a great deal of room for disagreement among reasonable attorneys as to the appropriate strategy or tactics to employ in the course of representation." *Woods v. McBride*, 430 F.3d 813, 821 (7th Cir. 2005). Generally, decisions regarding trial tactics are accorded "enormous deference," *United States v. Hirschberg*, 988 F.2d 1509, 1513 (7th Cir. 1993), and will not constitute ineffective assistance if "viewed from counsel's perspective at the time, [they] might be considered sound trial strategy." *Kubat v. Thieret*, 867 F.2d 351, 360 (7th Cir. 1989). *See also United States v. Dyer*, 784 F.2d 812, 817 (7th Cir. 1986) ("A reviewing court may only consider those acts or omissions of an attorney that are not classifiable as an attorney's tactics.").

With respect to the orange jumpsuit, this is clearly a point of trial strategy. Sebolt was approximately 22 years old at the time of trial and it is certainly plausible that counsel believed that the jury would find Sebolt more sympathetic when wearing the prison jumpsuit. Moreover, the Court specifically recalls this trial and notes that in light of the overwhelming evidence against Sebolt, no prejudice could have resulted from his wearing an orange jumpsuit.

Sebolt next contends that trial counsel was ineffective for eliciting testimony that he was facing charges in state court for child molestation. But, it is conceivable that trial counsel's strategy in raising the state court charges was intended to make the jury think that because he was being prosecuted in state court for related conduct, they did not need to "pile on" by also convicting him in federal court.

According to Sebolt, trial counsel essentially conceded guilt on the possession charge in her closing argument, which Sebolt contends constituted ineffective assistance. However, as noted by the Seventh Circuit in Sebolt's appeal, "Sebolt's strategy at trial was to admit to collecting child pornography but to deny distribution and advertisement." *Sebolt*, 460 F.3d at 914. Indeed, the Seventh Circuit further noted that "[t]he evidence proving Sebolt possessed child pornography was so overwhelming, at closing arguments, Sebolt practically admitted to the possession charge." *Id.* at 919. Trial counsel's possible strategy decision of essentially conceding to the possession charge in the hopes of obtaining a not guilty verdict on the distribution and advertising counts does not constitute ineffective assistance of counsel.

Sebolt next asserts that trial counsel erred by relying on the government's expert witness and failing to

hire an independent computer analyst. Sebolt contends that the "government witness did not have the credentials as an expert." (Pet.'s Mem. Supp. § 2255, Dkt. # 6, at 29.) However, as noted by the government, trial counsel informed Sebolt that they could not hire their own expert because of financial constraints (2/15/03 Letter from Odeh, Pet.'s Exh. 3), and, in such a situation, it is certainly within the realm of reasonable trial strategy to attempt to discredit the government's expert on cross-examination.

Finally, Sebolt argues that trial counsel was ineffective for failing to object to prior bad acts evidence. On appeal, the Seventh Circuit addressed Sebolt's objections to the Court's admission of such evidence under a plain error standard. It concluded that the Court did not err in admitting most of the evidence, *Sebolt*, 460 F.3d at 916-18, and while the admission of the boy's underwear Sebolt kept under his bed was error, such error was harmless in light of the other "overwhelming evidence of guilt." *Id.* at 918. Thus, the Court cannot conclude that the failure to object was prejudicial.

2. Sentencing Counsel

Sebolt argues that sentencing counsel, who was different from trial counsel, was ineffective for failing to arrange for a psychological assessment to counter the government's evaluation. He contends that such an evaluation "could have given the Court real insight into Sebolt's situation" (Pet.'s Mem. Supp. § 2255 Mot., Dkt. # 6, at 31), and "could have softened the government's presentation on how bad Sebolt was." (*Id*.) In a similar vein, Sebolt asserts that sentencing counsel failed to present meritorious mitigating factors in a sentencing memorandum or raise factors in support of mitigation at sentencing.

As to Sebolt's assertion that counsel failed to make arguments in support of mitigation, this simply is not true. Counsel filed written objections to the presentence investigation report and the Court held a lengthy sentencing hearing with respect to those enhancements. (3/3/04 Sent. Tr.) Morever, sentencing counsel provided the Court with character letters and asked the Court to consider Sebolt's age and potential for rehabilitation when sentencing him. (*Id*. at 56-57, 73-81.) More importantly, Sebolt fails to identify any particular factors that would or could have influenced the Court into reducing his sentence and instead relies on generalized assertions of mitigation evidence. "When a § 2255 petitioner faults his attorney for failing to object and present evidence . . . at sentencing, he bears the burden of demonstrating what evidence the attorney should have presented and that the presentation of such evidence had a reasonable probability of changing the result." *Dale v. United States*, No. 08–cv–424–JPG, 2010 WL 3023426, at *5 (S.D. Ill. Jul. 28, 2010) (citing *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003)). Sebolt has failed to do so.

The same is true of his argument that counsel should have obtained a psychological report from an expert. "Self-serving speculation about what a witness might have said is not sufficient to support a claim of ineffective assistance of counsel for failure to call the witness." *Dale*, 2010 WL 3023426, at *6. Theorizing about what a psychologist might have concluded after examining Sebolt and how it may have assisted in reducing his sentence is insufficient to establish ineffective assistance. As Sebolt himself noted, counsel "knew that this sentencing was going to be a very difficult event." (Pet.'s Mem. Supp. § 2255 Mot., Dkt. # 6, at 37.) It is reasonable to assume that counsel likely made the arguments he could based on the characteristics of the defendant and the offenses at issue. Sebolt's unspecified and unsubstantiated assertions to the contrary are unavailing. The Court concludes that Sebolt has failed to demonstrate ineffective assistance of sentencing counsel.

| STATEMENT |
|---|

D.  Conclusion

     For the reasons stated above, Sebolt's motion to vacate, set aside or correct his sentence is denied as to the claims regarding ineffective assistance of counsel related to trial strategy and sentencing counsel. The claims of ineffective assistance of trial counsel with respect to: (1) whether counsel informed Sebolt of his sentencing exposure prior to trial; (2) whether counsel advised Sebolt to reject the plea offer and, if so, whether that advice constituted ineffective assistance in light of the facts of this case; (3) whether counsel received Sebolt's approval prior to advising the Court that Sebolt was proceeding to trial; and (4) whether counsel discussed the possibility of additional charges with Sebolt in the context of whether to accept or reject the plea will be addressed in an evidentiary hearing.

     Counsel will be appointed for Sebolt in an order to follow. After counsel is appointed, the Court will set a date for a status at which time a hearing date will be set.

---

1. Some of the edges of the attached copy of the letter were cut off, so the bracketed words represent the Court's best guess as to what the missing parts state.